OPINION
{¶ 1} Appellant Tina Hilborn ("Mother") appeals the May 12, 2008 Judgment Entry, and May 12, 2008 Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Family Court Division, which terminated her parental rights, privileges and responsibilities with respect to her minor children, and granted permanent custody of the children to Appellee the Stark County Department of Jobs and Family Services ("the Department").
 STATEMENT OF THE CASE AND FACTS {¶ 2} Mother is the biological mother of Susan Taylor (DOB 4/12/90); Cassandra Taylor (DOB 5/25/92); Samantha Hilborn (DOB 8/23/95); Wesley Hilborn (DOB 8/8/96); Nathan Hilborn (DOB 3/11/99); and Dallas Bristow (DOB 9/21/00).[1] Susan Taylor and Dallas Bristow were placed into planned permanent living arrangements and are not subject to this appeal.
 {¶ 3} On March 15, 2006, after voluntary case planning failed, the Department filed a Complaint, alleging the children were dependent and neglected. The Complaint requested an order of protected supervision over the children. An initial shelter care hearing was conducted on the same day. Upon conclusion of the hearing, the trial court remained concerned with leaving the children in the home and ordered a family group meeting to occur the following day. The trial court continued the shelter care hearing for further proceedings to commence after the family group meeting. The trial court conducted the shelter care hearing on March 16, 2006, and granted the Department protective supervision. Following an adjudicatory hearing on April 12, 2006, the trial *Page 3 
court found the children to be dependent and continued protective supervision with the Department. The trial court approved and adopted a case plan which required Mother to complete various services to assure the safety of the children in the home and to mitigate the concerns which led to the Department's initial involvement. After Mother tested positive for cocaine, the trial court placed the children in the temporary custody of the Department on April 27, 2006.
 {¶ 4} The Department filed a Motion for Permanent Custody on February 12, 2008. Although properly served, Mother did not appear at the trial. The Guardian ad Litem filed a written report and was present at the hearing. She made a brief statement to the trial court and rested upon her written report in which she recommended permanent custody be granted to the Department.
 {¶ 5} Via Judgment Entry filed May 12, 2008, the trial court terminated Mother's parental rights, privileges and responsibilities in regard to Cassandra Taylor, Samantha Hilborn, Wesley Hilborn, and Nathan Hilborn. The trial court found the children could not or should not be placed with Mother; Mother failed to remedy the problems which initially caused the children to be removed from her home; and it would be in the children's best interest to grant permanent custody to the Department.
 {¶ 6} It is from this judgment entry as well as the Findings of Fact and Conclusions of Law Mother appeals, raising as her sole assignment of error:
 {¶ 7} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE." *Page 4 
 I {¶ 8} In her sole assignment of error, Mother contends the trial court's finding it was in the children's best interest to grant permanent custody was against weight and sufficiency of the evidence.
 {¶ 9} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279,376 N.E.2d 578.
 {¶ 10} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 11} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who *Page 5 
are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 12} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 13} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 14} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that *Page 6 
one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 15} The record reveals Mother did not appear at the permanent custody hearing. Although Mary Warlop, Mother's attorney, had not had contact with her since February 12, 2008, Mother telephoned Warlop on the morning of the hearing. Warlop reminded Mother of the hearing, but Mother claimed she was unaware of such. Mother told Warlop she would attempt to get a ride to the courthouse.
 {¶ 16} Deon Armstead, the on-going worker assigned to the family, testified Mother began Goodwill Parenting on two occasions, but was terminated both times-once for excessive absences and the second for failing her urine screen. Armstead noted the Department's overriding concern was Mother's substance abuse. Over the past two years, Mother followed the same pattern — she would maintain her sobriety for three months, then relapse. The Department had a history with Mother, dating back to 1999. Armstead explained the children had stated they were tired of Mother's promises to remain clean, then getting their hopes up only to have Mother relapse.
 {¶ 17} Mother did not have a permanent address despite the fact her case plan required her to find and maintain stable housing. Mother had been arrested on drug charges in Akron Municipal Court, which had an active warrant for her arrest. Mother underwent a parenting evaluation, which recommended she attend Quest. She attended two visits and then relapsed. Mother returned to Quest, but again relapsed. Mother underwent a psychological consultation, which recommended treatment for depression and anxiety. Mother began individual counseling at the Coleman Center, and had been attending "off and on" for one year. Mother sporadically attended AA. *Page 7 
Mother's last urine screen on January 10, 2008, was negative. However, Mother had a positive screen on December 4, 2007. The results of her urine screens between December 4, and 10, 2007, revealed her samples had been diluted.
 {¶ 18} Armstead also testified during the best interest portion of the hearing. The social worked indicated all of the children are Caucasian, and do not suffer from any physical disabilities. The children do not have any psychological or emotional problems. All of the children are in counseling, addressing issues relative to their separation from Mother and the possibility of permanent custody. Cassandra, 16, is a year behind in school. However, her foster mother is working with the school to get the girl extra classes so she can graduate. Cassandra's grades are good, and she does not have any behavioral issues. Samantha, 12, is not doing well academically, but she is not in a specialized program, nor does she have an IEP. Samantha does not display any behavioral issues at school or home. Wesley's grades had improved significantly. The major concern with the boy was lying, both at school and home. Wesley, 11, is in counseling to address this concern. Nathan, 9, was doing adequately in school. The boy was displaying behavioral issues at school, but the issues were being addressed in counseling. Nathan did not exhibit any behavioral issues in his foster home.
 {¶ 19} Cassandra, Samantha, and Nathan are placed in the same foster home, and are doing very well. They have been in the home for almost two years, and are very bonded with their foster mother. Wesley was originally placed with his siblings, but was removed to another home six months prior to the hearing because of his lying, which were disrupting the other children. Wesley visits his siblings every other week. The children all wish to be adopted. *Page 8 
 {¶ 20} Based upon the foregoing and the entire record in this matter, we find the trial court's findings the children could not or should not be placed with Mother within a reasonable time and it was in the best interest of the children to grant permanent custody to the Department are supported by clear and convincing evidence.
 {¶ 21} Mother's sole assignment of error is overruled.
 {¶ 22} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to Appellant.
[1] The fathers of the children are not parties to this Appeal. *Page 1